

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,         )
                                      )
vs.                                   )       No. SD33468
                                      )
JOHN SCOTT CRAMER,                    )       **Filed:  July 13, 2015**
                                      )
    Defendant-Appellant.          )

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Kenneth M. Hayden

**<u>AFFIRMED</u>**

John Scott Cramer ("Defendant") appeals from his conviction for one count of first-degree child molestation. *See* § 566.067.[1]  Defendant argues the trial court abused its discretion when it admitted Exhibit 9, which contained swabs used to take DNA samples from Defendant's hands, because there was not a sufficient foundation for that exhibit.  We disagree and affirm the trial court's judgment.

---

[1] All statutory references are to RSMo Cum. Supp. (2013).

**Factual and Procedural Background**

On October 2, 2010, Defendant and his wife went to spend the night at the home of Defendant's brother, Jason Cramer ("Mr. Cramer") in Camden County. Early the next morning, Defendant's wife woke up and saw Defendant coming out of the bedroom used by Mr. Cramer's four-year-old daughter ("Victim"). Defendant's wife confronted Defendant, and Defendant admitted he had touched Victim.

Defendant was subsequently arrested, and after his arrest, Detective Donald Scott Hines of the Camden County Sheriff's Department collected DNA samples from Defendant's hands using four cotton swabs. DNA found in the crotch of the underwear Victim had worn on the night of the offense was tested, and the results showed that DNA to be consistent with a mixture of Victim's DNA and the DNA on the swabs Detective Hines collected from Defendant's hands. Later, Detective Hines took a buccal swab from Defendant. The DNA analyst at the laboratory used the sample from the buccal swab as a reference standard to develop a DNA profile for Defendant. Testing showed the DNA sample from Defendant's buccal swab was consistent with both the DNA from the previous samples and the DNA found in Victim's underwear.

Defendant was charged with one count of first-degree child molestation. Defendant was tried by a jury on February 3 through February 6, 2014. At trial, the DNA evidence was presented to the jury through several exhibits and the testimony of four witnesses.

First, Detective Hines described taking the DNA samples from Defendant's hands. He stated Exhibit 9 contained what appeared to be the samples he took from Defendant's hands.

Detective Hines next identified Exhibit 10 as the buccal swabs taken from Defendant. Detective Hines stated that after collecting the samples in Exhibit 10 from Defendant, he packaged the buccal swabs and delivered the buccal swabs to the crime laboratory for DNA analysis. The prosecutor then offered Exhibit 9 and Exhibit 10 into evidence.

Defendant objected to the admission of both exhibits based on lack of foundation. Defendant argued there was no testimony explaining how Detective Hines "knew that these items were in fact items that he had taken as far as any identifying marks on the sample specimens." The trial court gave Defendant's attorney an opportunity to voir dire the witness. During that questioning, Detective Hines admitted he did not mark the samples in Exhibit 9 to indicate he was the one who collected the samples or to indicate the swabs were the ones he took from Defendant.

The trial court sustained the objection with respect to Exhibit 9, but indicated he would reconsider the decision if the prosecutor could lay further foundation. The trial court admitted Exhibit 10 over Defendant's objection.

The prosecutor then continued questioning Detective Hines. Detective Hines stated there was "no question" in his mind that the samples in Exhibit 9 were the samples he had taken from Defendant. He further explained that after collecting the Exhibit 9 samples, he took them to the evidence packaging room where he gave them to Deputy Travis Michael Edgar.

3

Then the prosecutor called Deputy Edgar to the stand. Deputy Edgar stated that when Detective Hines brought the Exhibit 9 samples to the evidence room, Deputy Edgar "immediately got a package and packaged them to be placed into evidence." The prosecutor then offered Exhibit 9 again, and this time the trial court overruled Defendant's objection.

After that testimony, the prosecutor presented the testimony of two DNA analysts who explained the DNA testing process and stated that the samples in both Exhibit 9 and Exhibit 10 were consistent with DNA found in the Victim's underwear.

The jury found Defendant guilty as charged. This appeal follows.

## Discussion

In his sole point on appeal, Defendant argues the trial court abused its discretion in admitting Exhibit 9 because "the State made no identifying marks on the DNA samples contained in Exhibit 9, and it therefore could not show that the samples were the ones taken from [Defendant]." This argument is without merit.

This Court reviews questions involving the foundation for the admission of evidence for an abuse of discretion. *See State v. Bowman*, 337 S.W.3d 679, 689 (Mo. banc 2011) (noting that the trial court has broad discretion in determining the sufficiency of the chain of custody). "Missouri law requires the State to provide a 'reasonable assurance' that the exhibit sought to be introduced is received from the defendant and is in like condition at the time of introduction as when received." *State v. Jones*, 204 S.W.3d 287, 296 (Mo. App. S.D. 2006). "This may be proven by evidence establishing a chain of custody[.]" *Bowman*,

4

337 S.W.3d at 689. "However, when an exhibit is identified positively at trial, chain of custody evidence no longer is required to prove that an item produced at trial is the item taken into custody as evidence." *Id.* In fact, visual identification, without more, is sufficient to identify physical evidence and support its admission at trial. *Id.* at 689-90.

In the present case, the State presented sufficient evidence to provide reasonable assurance of the identity of Exhibit 9. After Defendant first objected to the admission of Exhibit 9 because it had not been marked, the prosecutor questioned Detective Hines further. During that questioning, Detective Hines stated that there was "no question" in his mind that the samples in Exhibit 9 were the samples he took from Defendant's hands. Additionally, the prosecutor presented evidence that Detective Hines took the swabs directly to Deputy Edgar, who "immediately" packaged the samples to be placed into evidence. Finally, the prosecutor presented the evidence regarding the collecting and testing of the buccal swab from Defendant. On appeal, Defendant does not challenge the admission of the buccal swab in Exhibit 10. The DNA in the buccal swab in Exhibit 10, a known sample, was consistent with the samples in Exhibit 9. The testimony of Deputy Edgar and the testing of the buccal swab provide reasonable assurance that the samples in Exhibit 9 were the samples taken from Defendant's hands.

The trial court did not abuse its discretion in determining there was a sufficient foundation for the admission of Exhibit 9.

## Decision

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS